IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JULIE A. SU, Acting Secretary of Labor,<br>United States Department of Labor,<br>200 Constitution Avenue, N.W.<br>Washington, D.C. 20210,<br><br>                              Plaintiff,<br><br>              v.<br><br>BAKERY, CONFECTIONERY, TOBACCO<br>WORKERS & GRAIN MILLERS LOCAL 1,<br>7310 W. 39th Street<br>Lyons, IL 60534<br><br>                              Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## <u>COMPLAINT</u>

Plaintiff Julie A. Su, Acting Secretary of Labor, by and through her attorney, Morris Pasqual, Acting United States Attorney for the Northern District of Illinois, alleges as follows:

### Nature of the Case

1.      This action is brought under Title IV of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA or Act), 29 U.S.C. §§ 481-483, for a judgment declaring that the January 13, 2023, election conducted by the Bakery, Confectionery, Tobacco Workers and Grain Millers, Local 1 (Defendant or Union) for the President, Recording Secretary, and four Trustee offices is void, and directing Defendant to conduct new nominations and a new election for these offices under Plaintiff's supervision, and for other appropriate relief.

**Jurisdiction and Venue**

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 482(b), 28 U.S.C. § 1331, and 28 U.S.C. § 1345.

3.      This Court may exercise personal jurisdiction over Defendant because Defendant maintains its principal office in the village of Lyons, situated in Cook County, Illinois.

4.      Venue lies in this district pursuant to 29 U.S.C. § 482(b) and 28 U.S.C. § 1391(b).

**Parties**

5.      Plaintiff Julie A. Su is the duly appointed Acting Secretary of Labor, United States Department of Labor (Department).  Plaintiff is authorized to bring this action under section 402(b) of Title IV of the Act, 29 U.S.C. § 482(b).

6.      Defendant is, and at all times relevant to this matter has been, an unincorporated association maintaining its principal office in and residing within the County of Cook, Illinois, within the jurisdiction of this District.

**Factual Allegations**

7.      Defendant is, and at all times relevant to this action has been, a local labor organization engaged in an industry affecting commerce within the meaning of sections 3(i) and 3(j) and 401(b) of the Act, 29 U.S.C. §§ 402(i) and (j) and 481(b).

8.      Defendant represents approximately 3,200 active and retired baking industry workers from nineteen employers in Illinois, Indiana, and Iowa.

9.      Defendant scheduled a mail ballot election of its officers that would conclude in January 2023, including the mailing of ballot packages to members in December 2022 and a tally on January 13, 2023 (2023 Election).

2

10. The 2023 Election was subject to the provisions of Title IV of the Act (29 U.S.C. §§ 481-483).

11. The 2022 Constitution of the Bakery, Confectionery, Tobacco Workers and Grain Millers International Union (International Constitution) applied to the 2023 Election.

12. The Bylaws of Local Union No. 1 Bakery, Confectionery, Tobacco Workers and Grain Millers AFL-CIO-CLC, as amended April 19, 2008, (Bylaws) applied to the 2023 Election.

13. The Bylaws state, in part, at Article IV, section 3, that: "At least fifteen (15) days prior notice of the date of elections [sic] the Election Committee shall cause a notice and ballot to be mailed listing all candidates so nominated to all members of the Local who are not expelled at their last known address."

14. Article XVI, section 19 of the International Constitution provides that a local union's Financial Secretary "shall keep a correct list of the names and addresses of members in his/her local union . . . ." (Membership Address List).

15. Beth Zavala, Defendant's Financial Secretary-Treasurer, was not involved in maintaining or updating members' addresses in the Union's membership databases for the 2023 Election.

16. Defendant received mailing addresses for new members in 2022, prior to the 2023 Election period, through their Bakery, Confectionery, Tobacco Workers and Grain Millers Membership Application, which is collected by shop stewards or forwarded from employers.

17. In 2022, Defendant also received member mailing addresses directly from employers.

18. Between July and September 2022, Union President Donald Woods emailed employers requesting address updates for all bargaining unit employees represented by Defendant.

3

19.     Also between September 6 and 22, 2022, employers sent Defendant Union bargaining unit employee address lists for eighteen worksites.  Those employers and worksites were:

a)  Alpha Baking Co. (La Porte, IN);

b)  Bimbo Bakeries (formerly East Balt Commissary) (Chicago, IL);

c)  Bimbo Bakeries (Elkhart, IN);

d)  Bimbo Bakeries (Dubuque, IA);

e)  Clyde's Donuts (Addison, IL);

f)  Ferrero (formerly Nestle) (Franklin Park, IL);

g)  Gonnella Baking Co. (Aurora, IL);

h)  Gonnella Frozen Products (Schaumburg, IL);

i)  Mel-O-Cream Donuts Int'l. (Springfield, IL);

j)  Mondelez (Addison, IL);

k)  Mondelez (Chicago, IL);

l)  Mondelez Repack (Chicago, IL);

m) Mondelez (Naperville, IL);

n)  Schulze & Burch Biscuit Co. (Chicago, IL);

o)  Sweets Company (Chicago, IL);

p)  Sweets Mix Company (Chicago, IL);

q)  Teasdale Foods, Inc. (Hoopeston, IL); and

r)  Tootsie Roll (Chicago, IL).

20.     On September 19 and 21, 2022, President Woods emailed employee address lists from twelve worksites to officestaff@local1bctgm.org, an email address that all Union clerical employees may access.  Those worksites were:

    a)  Alpha Baking Co. (La Porte, IN);

    b)  Bimbo Bakeries (Elkhart, IN);

    c)  Clyde's Donuts (Addison, IL);

    d)  Gonnella Baking Co. (Aurora, IL);

    e)  Gonnella Frozen Products (Schaumburg, IL);

    f)  Mel-O-Cream Donuts Int'l. (Springfield, IL);

    g)  Mondelez (Naperville, IL);

    h)  Schulze & Burch Biscuit Co. (Chicago, IL);

    i)  Sweets Company (Chicago, IL);

    j)  Sweets Mix Company (Chicago, IL);

    k)  Teasdale Foods, Inc. (Hoopeston, IL); and

    l)  Tootsie Roll (Chicago, IL).

21.     Between September 21 and December 9, 2022, Defendant's clerical staff updated the Membership Address List in the Union's membership databases by referring to less than a third of the employer-provided lists of members' addresses collected by President Woods.

22.     Defendant failed to use at least ten employer-provided address lists that it received in 2022 to update its Membership Address List for the 2023 Election. Those employer-provided employee address lists were from the following worksites:

    a)  Alpha Baking (La Porte, IN)

    b)  Bimbo Bakeries (formerly East Balt Commissary) (Chicago, IL);

    c)   Bimbo Bakeries (Dubuque, IA);

    d)   Ferrero (formerly Nestle) (Franklin Park, IL);

    e)   Mel-O-Crème (Springfield, IL)

    f)   Mondelez (Chicago, IL);

    g)   Mondelez Repack (Chicago, IL);

    h)   Mondelez (Naperville, IL);

    i)   Teasdale Foods, Inc. (Hoopeston, IL); and

    j)   Tootsie Roll (Chicago, IL).

23.    Defendant did not use membership applications it possessed to update its Membership Address List for the 2023 Election.

24.    Prior to October 2022, Defendant used the Nova dues tracking database to maintain its Membership Address List.

25.    In October 2022, Defendant transferred its Membership Address List to a new database system, the Multi-Union Membership System (MUMS). The MUMS database is able track information the Union inputs regarding members' names, addresses, worksites, and dues payments. Alton Reed, a partner in the company that owns MUMS, assisted the Union with the database transition.

26.    In October and November 2022, the Union posted notices on its website and worksite bulletin boards asking members to update their mailing address with the Union if their address had changed within the previous two years.

27.    As of November 2022, Defendant had not conducted a test mailing or other mass mailing to its membership in order to receive updated membership address information for the 2023 Election.

28. The Union retained Election Works to provide services for the 2023 Election, including tabulating ballots and printing election results.

29. Election Works subcontracted with Forest Printing to print mail ballot packages.

30. On December 9, 2022, Alton Reed emailed Election Works and Forest Printing a member mailing list of 3,183 members with the words "Good Addresses" in the file name (Good Address List). This version of the Good Address List contained 32 members without a mailing address and 11 members with an incomplete address.

31. Prior to December 16, 2023, no one edited the addresses on the Union's December 9, 2022 Good Address List.

32. Further, prior to December 16, 2023, no one attempted to obtain complete or better addresses for the members on the December 9, 2022 Good Address List for the 2023 Election.

33. Also on December 9, 2022, Reed emailed Election Works and Forest Printing a member mailing list with the words "Bad Addresses" in the file name; it included 67 members for whom the Union did not have complete addresses (Bad Address List).

34. Prior to December 16, 2023, no one edited the addresses on the Union's December 9, 2022 Bad Address List.

35. Further, prior to December 16, 2023, no one attempted to obtain complete or better addresses for the members on the December 9, 2022 Bad Address List for the 2023 Election.

36. Together, the December 9, 2022 Good and Bad Address Lists contained the names of 3,250 members along with their address information, employer codes, and a membership status code.

37. Forest Printing prepared ballot packages for the 67 members on the Bad Address List, but only printed their names on the outer mailing envelopes. Forest Printing did not print any complete addresses on the ballot packages for these 67 members.

38. Defendant did not include the following 11 members on its December 9, 2022 Good and Bad Address Lists:

     a) Aguilar, Maurilio Jr.

     b) Boatman, Scott

     c) Gonzalez, Manuel

     d) Lebron, Carmen

     e) Leo, Roberto

     f) Roche, Christopher

     g) Sakellaris, Menelaos

     h) Sanchez, Arturo

     i) Turner, Darnell

     j) Turner, Darrell

     k) Washington, Kentrell

39. On December 16 and 17, 2022, the Election Committee prepared approximately 3,250 mail ballot packages to the membership containing:

     a) a postage-paid ballot return mailing envelope addressed to the Election Committee's Post Office box;

     b) a secret ballot envelope;

     c) a "BCTGM Local 1 Official Ballot [I]nstructions to Voters" sheet that included instructions on voting, mailing the ballot to be received by 9:30

a.m. on January 12, 2023, and requesting duplicate ballots before the "January 11th, 2023, 12:00 noon" deadline;

d) a "SPECIAL NOTICE TO ALL BCTGM LOCAL UNION 1 MEMBERS" sheet listing the offices to be elected and the candidates' names; and

e) a ballot.

40.     Between December 16 and 17, 2022, the Union mailed 3,207 ballot packages to members on the December 9, 2022, Good and Bad Address Lists. The Union mailed ballot packages to members with a dues "Paid" date of July 2022 or later as indicated in the MUMS database.

41.     The "SPECIAL NOTICE TO ALL BCTGM LOCAL UNION 1 MEMBERS" in the ballot package was the only election notice that Defendant mailed regarding the 2023 Election.

42.     The Union did not print any address on 41 of the ballot packages it had prepared for members based on the December 9, 2022 Good and Bad Address Lists. (Unmailed Ballot Packages).

43.     As of December 17, 2022, Defendant had complete addresses for at least 24 of these 41 members with Unmailed Ballot Packages—5 addresses from the employer-provided employee address lists in paragraph 19, above, and 19 addresses provided on Union membership applications—but the Union did not mail any ballot packages to these 24 members.

44.     Further, Defendant did not document the dates or individuals that it may have attempted to contact in its efforts, if any, to obtain the addresses necessary to mail the remaining 17 Unmailed Ballot Packages to members. Defendant did not mail ballot packages to those 17 members.

45. The Union did not prepare any ballot packages for the 11 members listed in paragraph 38 above. (Missing Ballot Packages).

46. Starting around December 19, 2022, the United States Postal Service (USPS or Postal Service) returned to the Union, at its principal office, 233 ballot packages for the 2023 Election that USPS determined to be undeliverable. (Undeliverable Ballot Packages).

47. Prior to the December 16-17, 2022, mailing of the ballots, Defendant had updated, complete addresses for at least 36 members with Undeliverable Ballot Packages—the addresses provided on the employer-provided employee address lists in paragraph 19 above—but Defendant did not use those addresses when mailing ballot packages to these 36 members on December 16-17, 2022.

48. Defendant marked undeliverable ballot packages for Julian Viramontes and Onterrio Teague as being received by the Union on December 27, 2022, but Defendant did not remail their ballot packages until more than three business days later in January 2023.

49. Defendant's notes on Undeliverable Ballot Packages for Uriel Maldonado, Salvador Antunez Salinas, and Jeremiah Wright, indicate that it did not attempt to obtain better addresses for them until January 4, 2023. The Union did not remail ballot packages to these three members.

50. Article IV, section 6 of the Bylaws states: "Every member in good standing shall be entitled to vote at all Local Union elections."

51. Sometime between October 2022 and December 9, 2022, the Union decided to make all members eligible to vote in the 2023 Election if the Union's membership database, MUMS, showed at least one dues payment for the member in the period from October 1, 2022, to January 13, 2023. In other words, the Union adopted a voter eligibility qualification for the 2023

Election that any member who was listed in MUMS as having a "Paid" date of October 2022 or later as of the tally date would be deemed eligible to vote. (Voter Eligibility Qualification).

52. Prior to the 2023 Election, the Union did not notify its membership of this Voter Eligibility Qualification.

53. On January 12, 2023, Defendant created its voter eligibility list for the 2023 Election with a total of 2,897 members deemed eligible to vote. The Union determined that the following members in good standing were eligible to vote in the 2023 Election:

   a) The 11 members with Missing Ballot Packages listed in paragraph 38 above;

   b) The 41 members with Unmailed Ballot Packages in paragraph 42 above;

   c) The 41 members with Undeliverable Ballot Packages in paragraphs 46 through 49 above.

54. On January 13, 2023, the Union conducted its tally for the 2023 Election. The Union counted 257 votes.

55. None of the 93 eligible members with Unmailed Ballot Packages, Undeliverable Ballot Packages, or Missing Ballot Packages listed in paragraph 53 voted in the 2023 Election.

56. Defendant determined that the margins of victory were 60 votes for President, 20 votes for Recording Secretary, and 52 votes between the fourth and fifth-placed candidates for the four Trustees offices.

57. Under Article XVI, Section 12(a) of the International Constitution, post-election protests must be submitted to the Local Union Secretary-Treasurer within ten days following the election. Members may appeal to the International's General Executive Board either "within ten

11

(10) days after the local union's decision, or, if no decision has been rendered, within forty (40) days after filing the original protest with the local union."

58.     By email and FAX to Defendant on January 22, 2023, the Complainants, Teresa Sanchez and Jerzy Blazejewski, members in good standing of Defendant, protested the 2023 Election.

59.     By email on March 2, 2023, Complainants submitted an appeal to the International's General Executive Board.

60.     By email on March 3, 2023, Complainants received a letter dated March 1, 2023, in which Defendant's Executive Board denied the protest.

61.     Complainants appealed the decision of the Defendant's Executive Board to the International's General Executive Board by letter dated March 11, 2023.

62.     On May 19, 2023, Complainants filed a complaint with the Secretary of Labor.

63.     Having invoked internal remedies for three months without receiving a final decision, Complainants timely filed a complaint with the Department of Labor on May 19, 2023, within the one calendar month required by section 402(a)(2) of the Act, 29 U.S.C. § 482(a)(2).

64.     The International's General Executive Board did not issue a final decision on Complainant's appeal until May 30, 2023.  The appeal was denied.

65.     By letter signed June 16, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to August 8, 2023

66.     By letter signed July 14, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to August 29, 2023.

12

67. By letter signed August 3, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to September 26, 2023.

68. By letter signed August 31, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to October 17, 2023.

69. By letter signed September 22, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to November 7, 2023.

70. By letter signed October 10, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to November 28, 2023.

71. By letter signed November 6, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to December 29, 2023.

72. By letter signed December 18, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to January 26, 2024.

73. By letter signed December 29, 2023, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to February 9, 2024.

74. By letter signed January 26, 2024, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to March 8, 2024.

75. By letter signed February 23, 2024, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to April 12, 2024.

76. By letter signed March 22, 2024, Defendant agreed that the time within which Plaintiff may bring suit with respect to Defendant's 2023 Election be extended to May 3, 2024.

77. Pursuant to section 601 of the Act, 29 U.S.C. § 521, and in accordance with section 402(b) of the Act, 29 U.S.C. § 482(b), Plaintiff investigated the complaint and, as a result of the facts shown by the investigation, found probable cause to believe that (1) violations of Title IV of the Act, 29 U.S.C. §§ 481-483, had occurred in the conduct of Defendant's January 13, 2023, election; and (2) that such violations may have affected the outcome of the 2023 Election and had not been remedied at the time of the institution of this action.

## First Cause of Action

78. Section 401(e) of the Act, 29 U.S.C. § 481(e), provides that "[n]ot less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address."

79. The Department's regulation at 29 C.F.R. § 452.99 states, in part, that election notices "must include a specification of the date, time and place of the election and of the offices to be filled."

80. Defendant violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), when it failed to properly update its Membership Address List, either before or during the 2023 Election, and failed to mail an election notice to all members at their last known home address not less than fifteen days prior to the election. *See id.*

81. The above violations of section 401(e) of the LMRDA, 29 U.S.C. § 481(e), may have affected the outcome of the 2023 Election for President, Recording Secretary, and four Trustee offices.

14

**Second Cause of Action**

82.    Section 401(e) of the Act, 29 U.S.C. § 481(e), provides that "every member in good standing . . .  shall have the right to vote for or otherwise support the candidate or candidates of her choice."

83.    The Department's regulation at 29 C.F.R. § 452.94, provides in part, that the LMRDA's "protection of the right to vote implies that there must be a reasonable opportunity to vote," and so "there is an obligation on the labor organization to conduct its periodic election of officers in such a way as to afford all its members a reasonable opportunity to cast ballots."

84.    Defendant violated section 401(e) of the LMRDA, 29 U.S.C. § 481(e), when it denied members a reasonable opportunity to vote by failing to properly update its Membership Address List, either before or during the 2023 Election, and by failing to mail ballots to every member in good standing in time for them to receive their ballots and vote. *See id.*

85.    The above violations of section 401(e) of the LMRDA, 29 U.S.C. § 481(e), may have affected the outcome of the 2023 Election for President, Recording Secretary, and four Trustee offices.

**Request for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendant as follows:

(a) declaring Defendant's election for the President, Recording Secretary, and four Trustee offices to be null and void;

(b) directing Defendant to conduct a new election, including new nominations, for the President, Recording Secretary, and four Trustee offices, under the supervision of Plaintiff;

(c)  for the costs of this action; and

15

(d) for such other relief as may be appropriate.

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General

MORRIS PASQUAL
Acting United States Attorney

By: s/ Craig A. Oswald
CRAIG A. OSWALD
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9080
craig.oswald@usdoj.gov

OF COUNSEL:

SEEMA NANDA
Solicitor of Labor

BEVERLY DANKOWITZ
Associate Solicitor

ELEANORE I. SIMMS
Counsel for Labor-Management Policy

LINDSY LEE
Senior Attorney
U.S. Department of Labor

16